No. 22-30320

# In the
# United States Court of Appeals for the
# Fifth Circuit

RONALD CHISOM; MARIE BOOKMAN, ALSO KNOWN AS GOVERNOR; URBAN LEAGUE OF LOUISIANA,

*Plaintiffs-Appellees,*

UNITED STATES OF AMERICA; BERNETTE J. JOHNSON,

*Intervenor Plaintiffs-Appellees,*

v.

STATE OF LOUISIANA, EX REL., JEFF LANDRY, ATTORNEY GENERAL,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, NEW ORLEANS CIVIL ACTION NO. 2:86-CV-4075

## BRIEF FOR RONALD CHISOM, MARIE BOOKMAN, AND URBAN LEAGUE OF LOUISIANA, PLAINTIFFS-APPELLEES

*Counsel on Inside Cover*

Leah C. Aden
Alaizah Koorji
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Tel.  (212) 965-7715
laden@naacpldf.org

Michael de Leeuw
Amanda Giglio
COZEN O'CONNOR
3 WTC, 175 Greenwich Street
55th Floor
New York, New York 10007
Tel.: (212) 908-1131
mdeleeuw@cozen.com

William P. Quigley
LOYOLA UNIVERSITY
SCHOOL OF LAW
7214 St. Charles Avenue
New Orleans, Louisiana 70118
Tel. (504) 710-3074
quigley77@gmail.com

Ronald L. Wilson
701 Poydras Street, Suite 4100
New Orleans, Louisiana 70139
Tel. (504) 525-4361
cabral2@aol.com

Andrew D. Linz
COZEN O'CONNOR
Liberty Place, 1650 Market Street
Suite 2800
Philadelphia, Pennsylvania 19103

*Attorneys for Ronald Chisom, Marie Bookman, and Urban League of La., Plaintiffs-Appellees*

# **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Defendant-Appellant | Counsel for Defendant-Appellant |
|---|---|
| State of Louisiana, ex rel. Jeff Landry, Attorney General of Louisiana | Elizabeth Murrill<br>OFFICE OF THE ATTORNEY GENERAL – BATON ROUGE, LA<br>P.O. Box 94005<br>Baton Rouge, LA 70804<br><br>Angelique Duhon Freel<br>Carey T. Jones<br>Lauryn Sudduth<br>Jeffrey Michael Wale<br>DEPARTMENT OF JUSTICE – BATON ROUGE, LA<br>1885 N. 3rd Street<br>Baton Rouge, LA 70802<br><br>Shae McPhee<br>DEPARTMENT OF JUSTICE – NEW ORLEANS, LA<br>909 Poydras Street, Suite 1850<br>New Orleans, LA 70112 |

| Plaintiffs-Appellees | Counsel for Plaintiffs-Appellees |
|---|---|
| Ronald Chisom<br><br>Marie Bookman<br><br>Urban League of Louisiana | Leah C. Aden<br>Alaizah Koorji<br>NAACP LEGAL DEFENSE &<br>EDUCATIONAL FUND, INC.<br>40 Rector Street, 5th Floor<br>New York, NY 10006<br><br>Ronald L. Wilson<br>701 Poydras Street, Suite 4100<br>New Orleans, LA 70139<br><br>William P. Quigley<br>LOYOLA UNIVERSITY<br>SCHOOL OF LAW<br>7214 St. Charles Ave.<br>New Orleans, LA 70118<br><br>Michael de Leeuw<br>Martin S. Bloor<br>Amanda Giglio<br>COZEN O'CONNOR<br>3 WTC, 175 Greenwich St., 55th Floor<br>New York, NY 10007<br><br>Andrew D. Linz<br>COZEN O'CONNOR<br>Liberty Place, 1650 Market St.<br>Suite 2800<br>Philadelphia, PA 19103 |

| Intervenor Plaintiff-Appellee | Counsel for Intervenor Plaintiff-Appellee |
|---|---|
| Justice Bernette J. Johnson | Nora Ahmed<br>Megan Snider<br>ACLU FOUNDATION<br>OF LOUISIANA<br>1340 Poydras Street, Suite 2160<br>New Orleans, LA 70112<br><br>Kelly E. Brilleaux<br>Connor W. Peth<br>IRWIN FRITCHIE URQUHART &<br>MOORE, L.L.C.<br>400 Poydras Street, Suite 2700<br>New Orleans, LA 70130<br><br>Jon Marshall Greenbaum<br>LAWYERS' COMMITTEE FOR<br>CIVIL RIGHTS UNDER LAW<br>1500 K Street NW, 9th Floor<br>Washington, DC 20005<br><br>James M. Williams<br>CHEHARDY, SHERMAN,<br>WILLIAMS, HAYES<br>One Galleria Boulevard, Suite 1100<br>Metairie, Louisiana 70001 |

| Intervenor Plaintiff-Appellee | Counsel for Intervenor Plaintiff-Appellee |
|---|---|
| United States of America | Kathleen P. Wolfe<br>Yael Bortnick<br>Erin Helene Flynn<br>U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, APPELLATE SECTION<br>Ben Franklin Station<br>P.O. Box 14403<br>Washington, DC 20044<br><br>Emily Brailey<br>U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, CRIMINAL SECTION<br>150 M. Street NE<br>4 Constitution Square, Suite 8.1138<br>Washington, DC 20004<br><br>Peter M. Mansfield<br>Duane A. Evans<br>U.S. ATTORNEY'S OFFICE, EASTERN DISTRICT OF LOUISIANA<br>650 Poydras Street, Suite 1600<br>New Orleans, Louisiana 70130 |

Dated: October 24, 2022

*/s/ Leah C. Aden*

Leah C. Aden

*Attorney for Plaintiffs-Appellees*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs-Appellees respectfully submit that oral argument is not necessary to render a decision on the narrow issue before this Court, namely, whether the State has satisfied its evidentiary burden to obtain the relief it seeks pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure.

Notwithstanding the above, Plaintiffs-Appellees stand ready and willing to appear for oral argument on the instant motion if such would be helpful to this Court.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ...............................................v

TABLE OF CONTENTS..................................................................... vi

TABLE OF AUTHORITIES ............................................................... vii

JURISDICTIONAL STATEMENT .......................................................1

COUNTER-STATEMENT OF THE ISSUES ..........................................1

COUNTER-STATEMENT OF THE CASE AND PROCEDURAL HISTORY .....1

   A.  The *Chisom* Litigation ....................................................1

   B.  The Consent Decree......................................................2

   C.  Enforcement of the Consent Decree ................................4

   D.  Ongoing Racially Polarized Voting in Louisiana..............7

   E.  The Alleged Malapportionment in the Louisiana Supreme Court Districts ...8

   F.  The *Allen* Litigation....................................................9

   G.  The Motion to Dissolve ...............................................10

   H.  The District Court's Decision........................................11

STANDARD OF REVIEW ...............................................................14

SUMMARY OF THE ARGUMENT ...................................................15

ARGUMENT ...................................................................................18

   A.  The District Court Did Not Abuse Its Heightened Discretion When It Denied the Attorney General's Attempt to Terminate the Decree.......................18

   B.  The Record Before This Court Is Inadequate to Justify Reversal...............32

CONCLUSION ...............................................................................34

CERTIFICATE OF SERVICE .........................................................35

CERTIFICATE OF COMPLIANCE..................................................36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Allen v. Louisiana*,
  14 F.4th 366 (5th Cir. 2021) .............................................................9, 10, 19, 31

*Anderson v. City of New Orleans*,
  38 F.4th 472 (5th Cir. 2022) .......................................................................14, 22

*Bd. of Educ. of Okla. City Pub. Schs., Indep. Sch. Dist. No. 89 v. Dowell*,
  498 U.S. 237 (1991)....................................................................................12, 16

*Chisom v. Roemer*,
  501 U.S. 380 (1991).............................................................................................2

*Chisom v. Roemer*,
  No. Civ. A. 86-4057, 1989 WL 106485 (E.D. La. Sept. 19, 1989).....................8

*Cooper v. Noble*,
  33 F.3d 540 (5th Cir. 1994) .......................................................................14, 18

*Frew v. Janek*,
  780 F.3d 320 (5th Cir. 2015) ......................................................................24, 27

*Frew v. Janek*,
  820 F.3d 715 (5th Cir. 2016) .............................................................26, 29, 30

*Horne v. Flores*,
  557 U.S. 433 (2009).........................................................................................15

*Knight v. Kirby Offshore Marine Pac. LLC*,
  983 F.3d 172 (5th Cir. 2020) ...........................................................................30

*League of United Latin Am. Citizens v. City of Boerne*,
  659 F.3d 421 (5th Cir. 2011) ...............................................................20, 23, 32

*NAACP v. City of Thomasville*,
  401 F. Supp. 2d 489 (M.D.N.C. 2005) .......................................................20, 32

*In re Off. of Chief Just., La. Supreme Ct.*,
  No. 2012-1342 (La. 10/16/12), 101 So. 3d 9 (La. 2012).....................................6

*Perez v. Stephens*,
  784 F.3d 276 (5th Cir. 2015) ..............................................................31

*Rivera v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of
  Labor*,
  22 F.4th 460 (5th Cir. 2021) ...............................................................28

*Robinson v. Ardoin*,
  No. CV 22-211-SDD-SDJ, 2022 WL 2012389 (M.D. La. June 6,
  2022) ....................................................................................................7

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992) (O'Connor, J., concurring)........................16, 19

*St. Bernard Citizens For Better Gov't v. St. Bernard Par. Sch. Bd.*,
  No. CIV.A. 02–2209, 2002 WL 2022589 (E.D. La. Aug. 26, 2002) ..................7

*Thornburg v. Gingles*,
  478 U.S. 30 (1986)................................................................................20

*Transier v. Barnes Bldg., LLC*,
  14-1256 (La. App. 3 Cir. 6/10/15), 166 So. 3d 1249 .........................27

*Wells v. Edwards*,
  347 F. Supp. 453 (M.D. La. 1972).........................................................8

*Wells v. Edwards*,
  409 U.S. 1095 (1973)..............................................................................8

## Other Authorities

Fed. R. Civ. P. 60(b) .......................................................................*passim*

House Bill No. 581, 1997 Reg. Sess. (La. 1997)..................................4, 8

J.R. 21(F) (La. 2021)..............................................................................8

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellees agree with Defendant-Appellant that this Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1292(a)(1).

## COUNTER-STATEMENT OF THE ISSUES

1.     Did the District Court abuse its discretion when it denied Defendant-Appellant's motion to vacate an institutional reform consent decree pursuant to Rule 60(b) of the Federal Rules of Civil Procedure where Defendant-Appellant failed to meet its evidentiary burden to obtain such relief?

## COUNTER-STATEMENT OF THE CASE AND PROCEDURAL HISTORY

### A.     The *Chisom* Litigation

In 1986, individuals Ronald Chisom, Marie Bookman, Walter Willard, Marc Morial, and Henry A. Dillon, III, along with the nonprofit voter education group Louisiana Voter Registration/Education Crusade, filed a class action complaint against three Louisiana officials in their official capacities. Plaintiffs claimed that the multimember district system for electing justices to the Louisiana Supreme Court in its First Supreme Court District prevented Black voters from having an equal opportunity to elect their preferred candidates in violation of Section 2 of the Voting Rights Act ("Section 2").  At that time, *no* Black person had *ever* been elected to the Louisiana Supreme Court, either from the First Supreme Court District or from any of the other judicial districts.

The parties[1] litigated these claims for approximately six (6) years, which included appeals to this Court and to the United States Supreme Court. *See*, *e.g.*, *Chisom v. Roemer*, 501 U.S. 380 (1991) (concluding that state judicial elections are included within the ambit of Section 2).

## B.     The Consent Decree

Following the extensive litigation, the parties jointly entered into a Consent Decree representing their collective desire "to effect a settlement of the issues raised by the complaint" to resolve the litigation, which was entered by U.S. District Judge for the Eastern District of Louisiana Charles Schwartz on August 21, 1992 (the "Decree"). ROA.98; ROA.104. In it, the State admitted its "belie[f] that the relief contained in this consent judgment will ensure that the system for electing the Louisiana Supreme Court is in compliance with Section 2." ROA.98; *see also* ROA.99 ("The relief contained in this consent judgment will *ensure* that the system for electing the Louisiana Supreme Court is in compliance with Section 2") (emphasis added); ROA.103 ("Defendants agree that, in order to comply with the

---

[1]     Plaintiffs-Appellees brought the original lawsuit against then-Governor of Louisiana, Edwin W. Edwards, then-Secretary of State of Louisiana, James H. Brown, and then-Commissioner of Elections of Louisiana, Jerry M. Fowler, and representatives of the State of Louisiana. But, notably, the application before this Court is now brought only by the Attorney General of Louisiana, Jeff Landry. As the current Governor of Louisiana, John Bel Edwards, has declined to serve as a movant in the instant action, and is seeking to file an opposition to the Attorney General's Brief, Plaintiffs-Appellees refer to Defendant-Appellant as either "Defendant-Appellant" or as the "Attorney General," *not* as "the State."

2

Voting Rights Act, and in order to *ensure* black voters in the Parish of Orleans have an equal opportunity to participate in the political process and to elect candidates of their choice, the Chisom plaintiffs and the United States are to be considered the prevailing parties in the litigation") (emphasis added). The Decree further stated that the judgement "is a restructuring of the Supreme Court of Louisiana by federal court order." ROA.103.

The Decree's "relief" was both interim and forward looking. To provide immediate relief, the Decree provided for the temporary addition of a Justice to the Louisiana Supreme Court—elected from Louisiana's Fourth Circuit Court of Appeals—to serve until a new Justice took office under a new plan for electing Supreme Court justices. ROA.99. The Decree ordered that this temporary Justice "shall participate and share equally in the cases, duties, and powers of the Louisiana Supreme Court" pursuant to "the Louisiana Constitution, the laws of Louisiana, and the Louisiana Rules of Court." ROA.100. To provide relief during future election cycles, the Decree called for the Louisiana legislature to enact legislation that "provides for the reapportionment of the seven districts of the Louisiana Supreme Court *in a manner that complies with the applicable federal voting law*, taking into account the most recent data available," including "a single-member district that is majority black in voting age population that includes Orleans Parish in its entirety" and would become effective on January 1, 2000. ROA.102 (emphasis added). The

Decree further states that "future Supreme Court elections after the effective date shall take place in the newly [seven single-member] reapportioned districts," and provides that "[t]he Court shall retain jurisdiction over this case until *the complete implementation* of the final remedy has been accomplished." ROA.102; ROA.104 (emphasis added).

The legislation called for by the Decree—codified as House Bill No. 581, 1997 Reg. Sess. (La. 1997) (hereinafter "Act 776")—was signed into law on July 10, 1997 and became effective on January 1, 1999. On January 3, 2000, the parties amended the Decree to incorporate that legislation "as an addendum to the Consent Judgment," and Judge Schwartz entered the amendment that same day. ROA.51. In doing so, the Decree explicitly incorporated the portions of Act 776 that allow Louisiana to redistrict the Supreme Court in future years, provided that Louisiana complies with the terms of the Decree, including applicable federal law, when it does so. *See* Act 776 § 101.1(e) ("The legislature may redistrict the supreme court following the year in which the population of this state is reported to the president of the United States for each decennial federal census.").

## C.    Enforcement of the Consent Decree

Since the Decree's entry, three preferred justices of Black voters have held the seat it established that includes Orleans Parish (the Seventh Judicial District): Justice Revius O. Ortique, Jr., Justice Bernette J. Johnson, and Justice Piper D.

4

Griffin. During Justice Johnson's tenure, the question of whether Justice Johnson's service in the temporary seat on the Louisiana Supreme Court established by the Consent Decree should be credited toward her total tenure on the Louisiana Supreme Court arose. Justice Johnson then filed a motion before the District Court in the instant case seeking, among other things, a declaratory judgment from the District Court stating that she was the rightful successor to the position of Chief Justice of the Louisiana Supreme Court. ROA.53-65. Both Plaintiffs-Appellees and the United States of America filed pleadings in support of Justice Johnson's motion.[2] But the State (through the Office of the Governor) opposed, filing a motion to dismiss Justice Johnson's application, arguing that the District Court lacked jurisdiction to assess Justice Johnson's application and should otherwise "abstain and defer to the State" on this issue. ROA.443-60.

---

[2]     Defendant-Appellant references the amicus brief that now counsel for Plaintiffs-Appellees, the NAACP Legal Defense and Educational Fund ("LDF"), submitted in the dispute over Justice Johnson's seniority on the Louisiana Supreme Court to support Defendant-Appellant's position that the "final remedy" of the Consent Decree was achieved at the conclusion of Justice Johnson's tenure on the Louisiana Supreme Court. But that argument is meritless. LDF's position has been predicated on the Seventh Judicial District remaining an effective, remedial district that permits Black voters to elect candidates of their choice in light of the illegal vote dilution that necessitated its establishment. For the reasons discussed *infra*, Defendant-Appellant's motion puts that district at risk of being diluted or eliminated, and threatens to reintroduce the same voting rights violation that prompted the Consent Decree.

The District Court denied the State's motion to dismiss and granted Justice Johnson's requests for a declaratory judgment. In doing so, the District Court concluded that it retained jurisdiction to assess Justice Johnson's application because the "final remedy" contemplated by the Consent Decree had not yet been achieved and the Consent Decree specifically provided that "the court entering the decree retains subject matter jurisdiction to interpret and enforce the decree's terms." ROA.1130. The District Court ordered the Louisiana Supreme Court to elevate Justice Johnson to the position of Chief Justice upon the retirement of the sitting Chief Justice. ROA.1160-61. The State appealed this decision to this Court in a further attempt to limit Justice Johnson's role on the Louisiana Supreme Court. But the merits of the appeal were not reached, as the Louisiana Supreme Court issued a decision holding that state law alone required Justice Johnson's *entire* tenure on the Louisiana Supreme Court should be credited towards her judicial service. *In re Off. of Chief Just., La. Supreme Ct.,* No. 2012-1342 (La. 10/16/12), 101 So. 3d 9, 21-22 (La. 2012).

Chief Justice Johnson served with distinction until 2020, when she retired from judicial service. ROA.1561. Following her retirement, another candidate of choice of Black voters, who is a Black justice—Piper D. Griffin, was elected to the Seventh Judicial District for a ten-year term. ROA.1575. Justice Ortique, Justice Johnson and Justice Griffin remain the *only* Black justices to sit on the Louisiana

Supreme Court; *no* other district in Louisiana has elected a Black Justice.  And no representatives for the State moved to modify or dissolve the Consent Decree while challenging Chief Justice Johnson's tenure credit or following Chief Justice Johnson's retirement.

### D.    Ongoing Racially Polarized Voting in Louisiana

Since the Decree was put into place, courts in this Circuit have identified racially polarized voting ("RPV") as an enduring feature of Louisiana's political landscape, including in statewide elections and in parishes adjacent to Orleans Parish.  *See, e.g., St. Bernard Citizens For Better Gov't v. St. Bernard Par. Sch. Bd.*, No. CIV.A. 02–2209, 2002 WL 2022589, at *7, 9 (E.D. La. Aug. 26, 2002) (finding RPV in both statewide gubernatorial elections and local parish elections, and noting that defendants "concede that the Parish shares the same segregationist history as the State of Louisiana and much of the South").  Earlier this year, a district court preliminarily enjoined the operation of Louisiana's congressional redistricting map challenged under Section 2, in part due to "a significant amount of historical voting data" showing "starkly racially polarized voting" in Louisiana's statewide and non-statewide elections.  *See Robinson v. Ardoin*, No. CV 22-211-SDD-SDJ, 2022 WL 2012389, at *48 (M.D. La. June 6, 2022).  The Supreme Court ultimately stayed the district court's injunction pending the Court's resolution of a different case concerning Section 2; but it did not suggest any error in the district court's

observations about the existence of RPV in Louisiana. *See* Order, *Ardoin v. Robinson*, No. 21-1596 (U.S. Sup. Ct. June 28, 2022).

### E.     The Alleged Malapportionment in the Louisiana Supreme Court Districts

The Louisiana Supreme Court districts remained unchanged for 76 years prior to the *Chisom* litigation.  They were first established by the Louisiana Constitution of 1921, after which the Louisiana Constitution of 1974—the current Constitution— provided that the Supreme Court districts would be set by statute going forward. That year, the districts developed in 1921 were reenacted by statute and were not amended until 1997, following entry of the Decree.  *See* Act 776 § 13:101.

Between 1921 and 1997, courts repeatedly recognized that the Louisiana Supreme Court districts were malapportioned.  *See, e.g., Wells v. Edwards*, 347 F. Supp. 453 (M.D. La. 1972); *Chisom v. Roemer*, No. Civ. A. 86-4057, 1989 WL 106485 (E.D. La. Sept. 19, 1989).  But the Louisiana legislature made no efforts to remedy this malapportionment, likely because judicial districts are not required to meet the one-person, one-vote principle and Louisiana state law does not require the Louisiana Supreme Court districts to be equally apportioned.  *See Wells v. Edwards*, 409 U.S. 1095 (1973), *aff'g* 347 F. Supp. 453, 454 (M.D. La. 1972) ("[T]he concept of one-man, one-vote apportionment does not apply to the judicial branch of the government."); J.R. 21(F) (La. 2021) (exempting the Louisiana Supreme Court

districts from the equal apportionment requirement in the 2021 joint rules for redistricting criteria).

Following entry of the *Chisom* Decree, the Louisiana Supreme Court districts remained malapportioned, but they have become less malapportioned in recent years. ROA.1954. And the Seventh Judicial District—established by the Decree— has become less malapportioned since 2010, shifting from approximately 32.3% underpopulated to approximately 28.4% underpopulated.

### F.    The *Allen* Litigation

Recently, a new set of plaintiffs brought another challenge to the districts charged with electing justices to the Louisiana Supreme Court under Section 2. *See Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021). In response, the Secretary of State moved to dismiss the action for lack of subject matter jurisdiction, arguing that the Consent Decree forced all challenges to the Louisiana Supreme Court districts to be heard by this District Court. The Middle District of Louisiana denied the Secretary of State's motion, and this Court affirmed that decision. *Id.* at 372-73.

After so holding, the Court made some additional observations about the decree in dicta. The Court recounted the District Court's holding that the "final remedy" contemplated by the Decree had not yet been implemented as of the litigation over Justice Johnson's tenure on the Louisiana Supreme Court (described above) and questioned whether the decree's "final remedy has been implemented"

9

in the decade that followed. *Id.* at 374. But the Court emphasized that the State had never moved to have the Decree vacated in the District Court, and therefore explained that it "need not decide" whether the Decree's "final remedy" had been implemented. *Id.*

### G.    The Motion to Dissolve

On December 2, 2021, the Attorney General filed its Motion to Dissolve the Decree pursuant to Rules 60(b)(5) and (6). The Attorney General premised its motion primarily on the argument that "[d]emographic changes throughout Louisiana" left "ongoing compliance with the Consent Decree both difficult to justify and detrimental to the public interest," which warranted its termination under Rule 60(b)(5). ROA.1446-48. In support, Attorney General contended that because of the "severe[] malapportion[ment]" within Louisiana's Supreme Court districts, the districts "cannot remain in their current form." ROA.1448. But, as the District Court ultimately recognized in denying the Attorney General's motion, the State failed to include *any* evidentiary support for its contention that the severe malapportionment alleged constituted a "significant change" warranting relief under Rule 60(b)(5) or that the Decree prevented the Louisiana legislature from redistricting the remaining six (6) districts to correct the severe malapportionment alleged. ROA.1953-57.

In a few sentences in its briefing before the District Court, the Attorney General also claimed that the Decree's final remedy "was implemented, and the relief sought was implemented," and pointed to this Court's decision in *Allen* as its primary support for that conclusion.   ROA.1447-48.   The Attorney General additionally attached eight (8) exhibits to its motion to support this claim.   These exhibits consisted of this Court's decision in *Allen*, the Decree (both in its original form and as amended), the election rolls of the three (3) justices who have held the seat established by the Decree, and a presentation entitled "Redistricting in Louisiana" dated September 17, 2021.   ROA.1450-1583.   During oral argument, when the District Court asked whether the Legislature would retain the opportunity-to-elect district if the Decree were no longer in place, the Attorney General responded that the legislature "needs a clean slate if they're going to reapportion" the Louisiana Supreme Court districts.   ROA.2027.   The Attorney General also made clear its position that the State has never agreed that its prior judicial districts violated Section 2, and thus is under no obligation to keep the remedies that addressed those violations in place.   ROA.2026-27.

## H.    The District Court's Decision

On May 24, 2022, the District Court issued its opinion denying the Attorney General's motion to dissolve on two grounds.   It noted that the Attorney General had

moved under the first and third clauses of Federal Rule of Civil Procedure 60(b)(5), and accordingly considered the motion under each clause.

The District Court reviewed the Attorney General's motion under the first clause pursuant to the standards articulated by the U.S. Supreme Court in *Board of Education of Oklahoma City Public Schools, Independent School District No. 89 v. Dowell*, which asks "whether the [state] had complied in good faith with the . . . decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practical." 498 U.S. 237, 249-50 (1991). While it noted that *Dowell* had been decided in the context of a desegregation decree, the District Court explained that several circuits apply the *Dowell* standard "when deciding Rule 60(b)(5) motions to terminate institutional reform decrees in other contexts as well." ROA1944-47. The District Court cited Sixth, Ninth, Fourth, Eleventh, First, and Eighth Circuit decisions where the *Dowell* standard was applied to determine Rule 60(b)(5) motions concerning institutional reform decrees. *See id*. The District Court added that the "Fifth Circuit has at times directly approved of *Dowell's* application to voting rights cases" and cited to the relevant cases from this Court to support its use of the *Dowell* standard in the instant case. ROA.1946-47.

Based on the Decree's purpose to ensure "that, under the Voting Rights Act, Black voters in Orleans Parish have an equal opportunity to participate in the political process, both at the time the [Decree] was entered and in the future," the

12

court below concluded that the Attorney General had not met its burden to demonstrate that either prong of the *Dowell* standard was met.  ROA.1947-48.  It further found that the Attorney General had not complied with the Decree in good faith because it "has not shown there is little or no likelihood the original violation will not be repeated," pointing to statements made in oral argument where the counsel for the Attorney General made clear that the Louisiana legislature would not be compelled to maintain an opportunity-to-elect district if the Decree were lifted.  ROA.1948.  Similarly, the Attorney General failed to show that "vestiges of past discrimination have been eliminated to the extent practicable" by showing that "the purpose of the consent order has been fulfilled" through—among other things—*evidence* showing that the preconditions of vote dilution and the "totality of the circumstances" no longer reflect illegal vote dilution.  ROA.1950-52.

The District Court then found that the Attorney General had not met its burden under Rule 60(b)(5)'s third clause to demonstrate a "significant change" in circumstances that would call for termination under the Supreme Court's *Rufo* standard.  ROA.1953-57.  The District Court observed—as discussed *infra*—that the "severe malapportionment" the Attorney General identified as the "significant change" requiring termination of the Decree has, in fact, been present in the Louisiana Supreme Court districts for nearly a century, and that the Louisiana Supreme Court districts are *less* malapportioned now than they were a decade ago.

The District Court also found that the Decree's continued enforcement would not damage the public interest because (i) judicial districts are not representative districts (*i.e.*, subject to the one-person, one-vote principal) and accordingly do not need to be equally apportioned, and (ii) the Decree, by its amended terms, does not otherwise prevent the Louisiana legislature from reapportioning the Louisiana Supreme Court districts.  *See id.*

On May 25, 2022, the Attorney General filed its notice of appeal.

## STANDARD OF REVIEW

A district court's denial of a motion to vacate or modify a judgment under Rule 60(b)(5) is reviewed for abuse of discretion.  *Anderson v. City of New Orleans*, 38 F.4th 472, 479 (5th Cir. 2022).  When conducting that abuse of discretion review, the Court considers the District Court's legal conclusions *de novo*, but will defer to any factual findings unless they are clearly erroneous.  *Id.* (citations omitted).

The Court's deference to a lower court's "exercise of discretion is heightened" in cases "involv[ing] consent decrees directed at institutional reform" because the Court of Appeals "owe[s] substantial deference to the [trial] judge's many years of experience with [the] matter."[3]  *Cooper v. Noble*, 33 F.3d 540, 543 (5th Cir. 1994)

---

[3]     Defendant-Appellant's suggestion that "federalism concerns" require this Court's review to be "somewhat closer" than abuse of discretion is misguided.  Def.-Appellant's Br. at 22 (quoting *Horne v. Flores*, 557 U.S. 433, 451 (2009)).  To the contrary, the Supreme Court has explained that addressing purported "federalism concerns" raised by consent decrees in the context of a motion to modify or dissolve

(citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 394 (1992) (O'Connor, J., concurring) and *Hutto v. Finney*, 437 U.S. 678, 688 (1978)).

## SUMMARY OF THE ARGUMENT

The Attorney General's motion to dissolve the Decree was properly denied by the District Court. The question below was simple: whether the Attorney General met its evidentiary burden to warrant modification or relief from the Decree either by showing that that compliance with the Decree was no longer equitable or that the Decree's final remedy had been implemented or satisfied. Fed. R. Civ. P. 60(b)(5). As the District Court found, the Attorney General utterly failed to meet its burden under either clause. Indeed, given the anemic record the Attorney General produced in this case—that is, eight exhibits consisting of a decision by this Court that does not bear on the instant case, election records of three Louisiana Supreme Court Justices who served on the *Chisom* seat, and a presentation discussing redistricting— none of which begin to meet the evidentiary burden of Rule 60(b)(5)—the District Court could not have ruled any other way.

The District Court did not abuse its discretion in finding that under *Rufo*, the Attorney General did not proffer any evidence of changed circumstances that would

---

under Rule 60(b)(5) motions requires only that the reviewing court utilize the standards established in *Rufo* (as the District Court did). *See Horne*, 557 U.S. at 451 ("Precisely because federalism concerns are heightened, a flexible approach to Rule 60(b)(5) is critical.").

make the Decree's continued enforcement inequitable, let alone propose a modification suitably tailored to those changed circumstances. *Rufo*, 502 U.S. at 383-84. The District Court properly rejected the Attorney General's argument that malapportionment made enforcement of the Decree detrimental to the public interest, particularly because malapportionment is by no means a new phenomenon (and therefore does not constitute changed circumstances), and the Decree specifically empowers the State to reapportion the judicial districts, so long as the opportunity-to-elect district is retained. The Attorney General's contention that the State is somehow hamstrung from redrawing its districts because of the Decree is plainly false.

Neither did the District Court err in holding that the Attorney General had not presented evidence to show that the final remedy of the Decree had been "satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). Under any applicable standard, whether *Dowell*, or substantial compliance as the Attorney General now urges for the first time on appeal, this argument fails. It was the Attorney General's burden to show that the State has complied with the Decree in good faith, and that the vestiges of discrimination have been eliminated to the extent practicable under *Dowell,* 498 U.S. at 248-50. To meet this burden, it could have presented evidence like the mitigation of racially polarized voting, for example. But it chose not to do so. And as to the good faith inquiry, it is notable what the record *does* show: an

Attorney General that went to great lengths to undermine the legitimacy of the *Chisom* seat by undercounting Justice Johnson's judicial tenure, *supra* at 4-6, and that made explicit in oral argument its belief that the State would not need to retain an opportunity-to-elect district if the Decree were dissolved. ROA.2025; ROA.2027. Given what is in the record, and no evidence to the contrary, the District Court did not abuse its discretion in finding that the Attorney General had made an insufficient showing under *Dowell*.

This Court should reject the Attorney General's new legal theory raised on appeal that the substantial compliance standard is the correct test for determining whether the Decree has been "satisfied" because it was not properly raised before the lower court. The Attorney General's legal theory draws from state contract law that is inapplicable here; further its position before lower courts assessing the continued enforcement of consent decrees that "substantial compliance" means anything over 50% is tenuous at best. Moreover, the consequences of endorsing such a standard for federal orders would be far-reaching, as it would theoretically undermine the potential impact of any judicially-endorsed settlement by almost half. Even if this Court adopted a "substantial compliance" standard for this question, the Attorney General would still be held to an evidentiary burden which it simply did *not* meet. And rather than absolve the Attorney General of this burden, this Court's

discussion (in dicta) of the Decree in *Allen* only confirms that the Attorney General had a procedure it needed to follow for the relief it sought.

The District Court's ruling should be affirmed by this Court because it is afforded "heightened" discretion, the reasoning was sound, and the Attorney General's evidentiary presentation was so deficient that it left no room for an alternative ruling by the District Court below or this Court.

## ARGUMENT

### A. The District Court Did Not Abuse Its Heightened Discretion When It Denied the Attorney General's Attempt to Terminate the Decree

The Attorney General moved to dissolve the Decree entirely under Rule 60(b)(5) on the basis of a threadbare record devoid of relevant evidence. The District Court properly acted within its "heightened" discretion in rejecting this motion. *Cooper*, 33 F.3d at 543. Rule 60(b)(5) provides a number of bases to seek modification of, or relief from, a federal court's judgment, only two of which the Attorney General invoked here. The Attorney General's primary argument in its motion below was that complying with the Decree "prospectively [would] no longer [be] equitable" under Rule 60(b)(5)'s third clause. Fed. R. Civ. P. 60(b)(5); *see also* ROA.1446-48. The Attorney General also referenced the Rule's first clause—which permits relief if "the judgment has been satisfied, released, or discharged," Fed. R. Civ. P. 60(b)(5)—in the background and standard of review sections of its motion,

but did not premise its legal arguments on Rule 60(b)(5)'s first clause. ROA.1443-46.

The District Court did not err in denying the motion because the Attorney General failed to meet its burden under either clause. The Court correctly concluded that the Attorney General failed to demonstrate changed circumstances that would render continued enforcement of the Decree inequitable, as both the Supreme Court and this Court have required under Rule 60(b)(5)'s third clause. The Attorney General similarly failed to show that the Decree had been "satisfied" under Rule 60(b)(5)'s first clause. And, despite the Attorney General's reliance on it both here and in its arguments below, this Court's decision in *Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021), does not compel a different result.

1. The District Court Correctly Applied the Supreme Court's *Rufo* Standard

The Attorney General's argument that the District Court abused its discretion in finding that it had not met its significant burden to justify terminating the Decree under the third prong of Rule 60(b)(5) is unavailing. In *Rufo*, the Supreme Court held that to modify or terminate a consent decree under this part of Rule 60(b)(5), a movant must establish: (1) "a significant change in facts or law warrants revision of the decree" and (2) "the proposed modification is suitably tailored to the changed circumstances." 502 U.S. at 368. This Circuit has clarified that evidence that "it is no longer convenient to live with [the decree's] terms" is insufficient to satisfy this

burden," *League of United Latin Am. Citizens v. City of Boerne*, 659 F.3d 421, 437 (5th Cir. 2011) (quoting *Rufo*, 502 U.S. at 383), and that the *Rufo* standard must be satisfied through record evidence, *id.* at 438 (citing *Rufo*, 502 U.S. at 384).

Specifically regarding institutional reform consent decrees addressing voting rights violations under Section 2 as here, this Circuit and others require the movant to show that the underlying conditions of the alleged violations—as outlined by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986)—are no longer present. *See Boerne*, 659 F.3d at 439 (describing evidence (absent in this case) that could have satisfied the *Rufo* standard concerning RPV or the history of "which candidates the protected class tended to support . . . or what the outcomes of those elections were"); *see also NAACP v. City of Thomasville*, 401 F. Supp. 2d 489, 502 (M.D.N.C. 2005) (engaging in the "searching practical evaluation" of underlying electoral conditions demanded by *Gingles* when reviewing a motion to dissolve a consent decree that addressed Section 2 claims (quoting *Gingles*, 478 U.S. at 45)). Tellingly, the Attorney General's brief is silent as to this Circuit's recognition of its "hefty" burden to satisfy the *Rufo* standard through the presentation of record evidence, let alone its burden to demonstrate through that record evidence that the violations of Section 2 remedied by the Decree have been addressed.

The District Court correctly concluded that the Attorney General failed to satisfy its significant evidentiary burden under *Rufo*. Below, the Attorney General

argued that the Decree should be terminated because "severe malapportionment" made ongoing compliance with the Decree's terms "both difficult to justify and detrimental to the public interest." ROA.1444; ROA1446. But the Attorney General attached only eight (8) non-material exhibits to its motion to support this claim, which consisted of this Court's decision in *Allen*, the Decree (both in its original form and as amended), the election rolls of the three (3) justices who have held the seat created by the Decree, and a presentation entitled "Redistricting in Louisiana" dated September 17, 2021. ROA.1450-1583. This limited record did not support the Attorney General's claim that "severe malapportionment" in the Louisiana Supreme Court districts constituted a "significant change" warranting termination of the Decree because "severe malapportionment" had been present in the Louisiana Supreme Court districts since 2000. ROA.1954. In fact, the District Court found that the Louisiana Supreme Court districts are *less* malapportioned today than they were after the 2010 census and that, prior to the Decree, the Louisiana Supreme Court districts had remained unchanged (despite malapportioned) for 76 years. *Id.*

Similarly, the District Court found that the evidentiary record before it did not support the Attorney General's claim that enforcement of the Decree would be detrimental to the public interest. The District Court noted that there is no legal obligation to ensure that the Louisiana Supreme Court districts be equally apportioned, that the State *could* reapportion the other six (6) Louisiana Supreme

Court districts based on the Decree's express terms, as amended, and that, per the Consent Decree's terms, the State could reapportion all seven (7) of the Louisiana Supreme Court districts, so as long as the proposed reapportionment either complied with the Decree or conformed with an agreed-upon modification to the Decree's terms. The Attorney General itself acknowledges the *Chisom* Plaintiffs' and the Department of Justice's "well-intentioned" willingness to work with the State to draw a new map that addresses the claimed malapportionment and preserve the opportunity-to-elect district created by the Decree. Def.-Appellant's Br. at 41-42. The Decree does not stand (nor has it ever stood) in the way of the State performing its "sovereign function in accordance with Louisiana law." *Id.* at 42.

The District Court's determinations regarding the sufficiency of the Attorney General's evidentiary record are factual findings, and are accordingly reviewed for clear error. *See Anderson*, 38 F.4th at 479 (citing *Cooper*, 33 F.3d at 545). And the Attorney General has made no effort to show that the District Court clearly erred in its assessment of the limited evidence it presented, even going so far as to *admit* that malapportionment has long been present in the Louisiana Supreme Court districts and that the District Court's findings regarding the history of malapportionment were correct. *See* Def.-Appellant's Br. at 44 ("Perhaps the district court is correct that previous officials have not shown much concern for malapportionment in the past.").

Further, contrary to the Attorney General's claims that the District Court "refus[es] to return power to State officials," the District Court specifically noted that the State *retains* the power to redistrict the Louisiana Supreme Court while the Decree remains in effect.  ROA.1956.  Nothing is preventing the State either from redistricting the six (6) other Louisiana Supreme Court districts to correct ever-present malapportionment or from proposing a map that redistricts *all seven* (7) of the Louisiana Supreme Court districts and presenting that proposal to the District Court to ensure continued compliance with the Decree.

The State presented no evidence that the latter process would be burdensome, and, to reiterate, the Plaintiffs and United States have made clear that they would work with the State to resolve any malapportionment concerns, which is the State's burden to bear. And, in any event, this Circuit has recognized that evidence showing "it is no longer convenient to live with [the decree's] terms" is insufficient to satisfy the *Rufo* standard.  *Boerne*, 659 F.3d at 437.

Accordingly, the District Court's finding that the Attorney General's purported concerns with malapportionment failed to demonstrate "significant change" warranting termination of the Decree should be affirmed.

### 2.   The District Court Correctly Found that the Consent Decree Was Not "Satisfied"

The Attorney General's alternative argument that the Consent Decree has been "satisfied" fares no better.  The first prong of Rule 60(b)(5) permits a court to,

in its discretion, relieve a party from a judgment that "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). And the Decree provides that the enforcing court "shall retain jurisdiction over this case until the *complete implementation* of the final remedy has been accomplished." ROA.104 (emphasis added).

Below, the Attorney General argued that "the final remedy [of the Decree] was implemented, and the relief sought was implemented," warranting relief under this prong of Rule 60(b)(5). The District Court rejected that argument, finding that the Attorney General failed to make a sufficient showing that the State had complied with the Decree or that its purpose had otherwise been satisfied. ROA.1953. Now, the Attorney General argues that State's "substantial compliance" with the Decree— as opposed to its "implementation"—is sufficient to warrant relief under the first prong of Rule 60(b)(5). But, as explained below, the Attorney General has failed to satisfy its burden under any applicable standard.

As identified by this Court, the law on the first prong of Rule 60(b)(5) is underdeveloped as it is rarely invoked and "almost never applied to consent decrees." *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015). The District Court carefully canvassed the decisions of this Court and its sister circuits, and applied a line of cases arising out of the school desegregation institutional reform context to analyze the Attorney General's argument that it had "satisfied" the Decree. ROA.1943-47 (citing *Dowell*, 498 U.S. at 248-50).

24

This Court can reserve judgment on whether *Dowell* provides the correct framework analyzing whether an institutional reform decree is "satisfied" under Rule 60(b)(5) as the outcome here is the same regardless of the standard applied. As stated *supra*, the record presented to the District Court was woefully inadequate. ROA.1450-1583. Indeed, evidence that three Black justices have been elected to the *Chisom* seat since the Decree's implementation shows only that the Decree continues to do its job, *not* that its remedial goal is complete.

The District Court correctly concluded that the express terms of the Decree articulate its purpose: "to *ensure* black voters in the Parish of Orleans have an equal opportunity to participate in the political process and to elect candidates of their choice." ROA.1941 (quoting ROA.103); *see also supra* at 2-3. The District Court further concluded that the "common intent" of the contracting parties, as embodied in the clear terms of the agreement, "construed as a whole," was to do more than simply accomplish the checklist creating the temporary *Chisom* seat and current District Seven; it "contemplates future compliance." ROA.1940-42.

With that in mind, the District Court was proper in finding that the State needed to (but did not) present evidence that the Decree was no longer necessary to remedy the vote dilution that it was intended to address. ROA.1951-53. To the contrary, counsel for the Attorney General made clear that the Legislature would not be required to preserve the opportunity-to-elect created by the Decree if the Decree

were terminated.  *See* ROA.2025 ("if the legislature is going to *truly reapportion the districts* that they can[not] be bound or committed to making any one parish any particular kind of district.  The reapportionment rules don't require that and don't mandate that.").  The Legislature's documented attempts to limit the terms of the Decree and the Attorney General's current claim that "severe malapportionment"— which has been present for nearly a century—suddenly requires upheaval underscore that intent.  And, absent evidence to the contrary, eliminating the *Chisom* seat would allow the voting rights violations challenged in the original complaint to resurface and would require Plaintiff-Appellees to *relitigate* the very same claims that the Decree resolves, the antithesis of "satisfying" the Decree.

On appeal, the Attorney General now wrongly attempts to graft a "substantial compliance" doctrine here because it incorrectly suggests that this Court has generally interpreted prong one of Rule 60(b)(5) to require only such compliance.  The Attorney General misreads this Court's precedents, which interpreted a *Texas* consent decree in light of the Texas contract doctrine of substantial compliance.  *See Frew v. Janek*, 820 F.3d 715, 721 n.19 (5th Cir. 2016) (quoting *Frew*, 780 F.3d at 330 ("In determining that a party to a contract has fulfilled its contractual obligations, *Texas law allows* substantial compliance.") (emphasis added).

Nothing in this Court's jurisprudence, however, suggests that this Texas *state* contract law doctrine provided the appropriate substantive standard for a *federal* rule

of civil procedure more generally. And nothing in this Court's jurisprudence suggests that "substantial compliance" amounts only to "more than 50%," as the Attorney General has recently argued elsewhere. *See* Br. of Amici Curiae the State of Louisiana in Supp. of the City of New Orleans' Mot. to Terminate the Consent Decree at 3, No. 2:12-CV-01924 (E.D. La. Sept. 15, 2022), ECF No. 642-1. These cases merely illustrate that, to determine whether a judgment is "satisfied" under Rule 60(b)(5), courts must look to the terms of the judgment—and for consent decrees, which are contracts, do so by "look[ing] to state law to provide the rules of contract interpretation."[4] *Frew*, 780 F.3d at 327 n.28 (internal quotation omitted). And to the extent that this Court determines that "satisfaction" and "substantial compliance" are synonymous, neither can mean that the Defendant-Appellant need only accomplish "more than 50%" of a consent decree's purpose.

Determining whether the Decree has been "satisfied"—or even "substantially complied" with—thus requires some showing that its essential remedial promise—that "black voters in the Parish of Orleans have an equal opportunity to participate in the political process and to elect candidates of their choice"—will continue to

---

[4]    While Louisiana contract law does recognize the concept of substantial performance, that is a limited doctrine that grows out of the construction context, and which is based on a provision of Louisiana's Civil Code that exclusively relates to constructing buildings. *See Transier v. Barnes Bldg., LLC*, 14-1256 (La. App. 3 Cir. 6/10/15), 166 So. 3d 1249, 1260 (citing La. Civ. Code Ann. art. 2769 (2022)). Texas's concept of "substantial compliance" is, therefore, flatly inapplicable to whether the State has "satisfied" this Louisiana consent decree under Rule 60(b)(5).

exist.  One could imagine a host of ways the Attorney General could have attempted to make that showing: proposing a redistricting plan that addressed the State's purported concerns with malapportionment while maintaining an opportunity-to-elect district in New Orleans; pointing to state legislative action to durably protect the voting rights of Black voters in Orleans Parish; or introducing evidence that an opportunity-to-elect district is no longer necessary—*i.e.*, that the factors constituting voting dilution under the Voting Rights Act have abated.  But Defendant-Appellant made no effort to address its obligation to show future compliance, claiming instead that the mere fact of Justice Johnson's successful, completed tenure brought the decree's institutional reform remedy to a close.

Even putting the Attorney General's lethargic effort to satisfy its burden aside, the plain language of the consent decree contemplates "complete"—not "substantial"—implementation of the final remedy.  *See* ROA.104.  Adopting the State's proposed substantial compliance rule would lead to absurd, far-reaching results well beyond the consent decree context.  If, as the State suggests, Rule 60(b)(5) requires a party to only *substantially* comply to "satisf[y]" its obligation, that lowered threshold of compliance would apply to *every federal judgment*.  It cannot be the case that parties are permitted to only mostly comply with the terms of a federal court injunction; indeed, this Court has emphasized that "[a] party *must* follow a court order" lest be held in contempt.  *Rivera v. Dir., Off. of Workers' Comp.*

28

*Programs, U.S. Dep't of Labor*, 22 F.4th 460, 466 (5th Cir. 2021) (emphasis added). But the Attorney General's proposed interpretation of this doctrine would lead to exactly that result.

Moreover, even if substantial compliance were the right test for "satisfying" the Decree, the record the Attorney General relies on here would still be inadequate to meet that lower standard for at least two reasons. First, the Attorney General would still need to have substantially complied with the Decree's actual mandate— namely, durable ongoing institutional reform. Second, it would need to make an evidentiary showing to that effect. But it has done neither.

For one thing, the Attorney General would still "bear the burden of showing substantial compliance," that is, that it fulfilled the material provisions of the Decree and that any "deviations from [its] provisions . . . [did] not severely impair the contractual provision's purpose." *Frew*, 820 F.3d at 721 (internal quotation marks omitted). As discussed above, the clear purpose of the Decree's provisions, as embodied in its unambiguous text, calls for future compliance to "ensure" that Black voters in New Orleans have an equal opportunity to elect candidates of their choice in "future . . . elections." ROA.102-03. It is this obligation that State would need to have "substantially" performed.

Second, even in the narrow circumstances where this Court has applied a substantial compliance standard in reviewing a motion under the first prong of Rule

60(b)(5), it still held the state to its evidentiary burden. *See Frew*, 820 F.3d at 726 (emphasizing, after construing the terms of the controlling Texas consent decree, that the government defendants "still have the burden to establish that they have satisfied their obligations under Rule 60" and remanding because they "have put forth no evidence" responsive to the decree's terms, properly construed). The Attorney General has not even begun to meet that burden. The eight exhibits it attached to its motion do not "establish that [it has] satisfied [its] obligations," *id.*, because they do nothing to show that an opportunity-to-elect district will either be preserved in the future or is no longer necessary.

In sum, the District Court did not abuse its discretion in rejecting the State's motion under the first prong of Rule 60(b)(5) because the Attorney General failed to show that it had "satisfied" its obligations, whether that showing required the elements set forth in *Dowell* or the inapplicable standard of substantial compliance.

### 3.  This Court's Decision in *Allen* Does Not Mandate a Different Result

The Attorney General makes much of this Court's decision in *Allen*, and appears to argue that this Court's statements about the Decree make up for the State's failure to present sufficient record evidence to meet its "hefty" burden before the District Court. It does not. The portions of the *Allen* decision relied on by the Attorney General appear in *dicta*, which did not bind the District Court and do not bind this panel. *See Knight v. Kirby Offshore Marine Pac. LLC*, 983 F.3d 172, 177

(5th Cir. 2020) (emphasizing that a statement by the Court of Appeals concerning an issue "unnecessary for deciding the issue before the court" is "*dictum* and, concomitantly, not binding precedent"); *Perez v. Stephens*, 784 F.3d 276, 281 (5th Cir. 2015) (defining dictum as "judicial comment . . . that is unnecessary to the decision in the case and therefore not precedential") (citation omitted). Indeed, in the sentences that immediately follow, this Court explicitly acknowledges that the State had not followed the proper procedure for terminating the Decree and that it "*need not decide*" whether the Decree's final remedy has been implemented to answer the limited, unrelated question before it. 14 F.4th at 374 (emphasis added).

Because the State had not sought to vacate the decree in *Allen*, this Court did not have the benefit of adversarial briefing and a thorough consideration of the relevant parts of the record. It is therefore not surprising that the *Allen* Court did not consider the purpose of the Decree, which, as discussed *supra*, seeks to correct the violations of Section 2 identified in *future* elections by establishing the opportunity-to-elect for Black voters in the Seventh Judicial District.

It bears repeating that the Attorney General has referenced the Legislature would not at all be bound to retain the opportunity-to-elect district established by the Decree. And it has made no showing that Justice Johnson's tenure as Chief Justice of the Louisiana Supreme Court somehow evidences that the vote dilution identified in the original complaint has been otherwise addressed. Instead, the fact that the

Seventh Judicial District *remains* the only district that has elected a Black justice as the candidate of choice of Black voters to the Louisiana Supreme Court only supports the need for the Decree to remain in place, and for the Seventh Judicial District to remain an opportunity-to-elect district for Black voters, pursuant to its terms, unless and until the State can demonstrate that dilution will not occur without it or a similar opportunity district.

### B.    The Record Before This Court Is Inadequate to Justify Reversal

The Attorney General's record is a far cry from what this Court would need to evaluate whether circumstances have so thoroughly changed that the District Court's refusal to grant the Attorney General's motion amounts to an abuse of discretion. For this reason, if this Court decides that the District Court erred in its decision, the only appropriate remedy would be to remand the case to the District Court with instructions to call for the Attorney General to present sufficient evidence showing that the "totality of the circumstances" no longer evidences vote dilution. *See Boerne*, 659 F.3d at 438-40 (reversing order modifying consent decree that resolved Section 2 vote dilution claims and remanding to district court to permit "supplemental filings and conduct proceedings, as necessary, to develop a sufficient record" to assess application); *NAACP v. City of Thomasville*, 401 F. Supp. 2d 489, 502 (M.D.N.C. 2005) (engaging in the "searching practical evaluation" of

underlying electoral conditions to assess motion to dissolve a consent decree that resolved Section 2 vote dilution claims).

Reversing the District Court's decision without calling for additional evidence from the Attorney General would have far-reaching effects beyond merely excusing the Attorney General for disregarding its heavy evidentiary burden under Rule 60(b)(5) in this case. Such a decision would eviscerate the power of the federal courts to remedy statutory violations (born out of constitutional doctrines) through consent decrees in cases where time is a factor. Put differently, reversal on this record would effectively allow the State simply to wait until enough time passes and then claim, based on little more than the longevity of the decree, that circumstances must have changed, and "enough is enough," without any *actual* evidence that the illegal conditions underlying the decree had been remedied.

Appellees do not labor under the misapprehension that the Decree should last forever. But it should last until the moving party satisfies its burden to present relevant and sufficient record evidence demonstrating that its purpose—remedying vote dilution present in the electoral process for the Louisiana Supreme Court—has been fulfilled. The Attorney made almost no effort to present such evidence to the District Court, and the Decree should remain in place until it does.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the order of the District Court or, in the alternative, vacate the order and remand to hold an evidentiary hearing at which the Attorney General must introduce sufficient evidence to meet its burden under Rule 60(b)(5).

Dated: October 24, 2022                    Respectfully submitted,

<div style="display:flex">

William P. Quigley
LOYOLA UNIVERSITY
SCHOOL OF LAW
7214 St. Charles Avenue
New Orleans, Louisiana 70118
Tel. (504) 710-3074
quigley77@gmail.com

Ronald L. Wilson
701 Poydras Street, Suite 4100
New Orleans, Louisiana 70139
Tel. (504) 525-4361
cabral2@aol.com

Andrew D. Linz
COZEN O'CONNOR
Liberty Place, 1650 Market Street
Suite 2800

Philadelphia, Pennsylvania 19103

</div>

/s/ Leah C. Aden

Leah C. Aden
Alaizah Koorji
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Tel.  (212) 965-7715
laden@naacpldf.org

Michael de Leeuw
Amanda Giglio
COZEN O'CONNOR
3 WTC, 175 Greenwich Street
55th Floor
New York, New York 10007
Tel.: (212) 908-1131
mdeleeuw@cozen.com

*Attorneys for Plaintiffs-Appellees*
*Ronald Chisom, Marie Bookman, and*
*Urban League of Louisiana*

34

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2022, a true and correct copy of the foregoing Brief for Ronald Chisom, Marie Bookman, and Urban League of Louisiana, Plaintiffs-Appellees was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. Participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Upon request by the Court, 7 paper copies will be filed with the Court within the time provided.

Dated: October 24, 2022

/s/ Leah C. Aden

Leah C. Aden

*Attorney for Plaintiffs-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,994 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

Dated: October 24, 2022                    */s/ Leah C. Aden*
                                                            Leah C. Aden
                                                            *Attorney for Plaintiffs-Appellees*