No. 22-30320

# In the United States Court of Appeals for the Fifth Circuit

RONALD CHISOM; MARIE BOOKMAN, ALSO KNOWN AS GOVERNOR; URBAN
LEAGUE OF LOUISIANA,

*Plaintiffs - Appellees*

UNITED STATES OF AMERICA; BERNETTE J. JOHNSON,

*Intervenor Plaintiffs - Appellees*

v.

STATE OF LOUISIANA, EX REL, JEFF LANDRY, ATTORNEY GENERAL,

*Defendant - Appellant*

———————————————

On Appeal from the United States District Court
for the Eastern District of Louisiana
2:86-cv-4075

———————————————

## APPELLANT'S REPLY BRIEF

———————————————

JEFF LANDRY
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Telephone: 225-938-0779

*Counsel for Appellant*

ELIZABETH MURRILL
Solicitor General

SHAE MCPHEE
Deputy Solicitor General
mcphees@ag.louisiana.gov

ANGELIQUE DUHON FREEL
CAREY T. JONES
LAURYN SUDDUTH
JEFFREY MICHAEL WALE
Assistant Attorneys General

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

SUMMARY OF THE ARGUMENT ..................................................... 1

ARGUMENT ....................................................................................... 2

   I.  THE STATE HAS SUBSTANTIALLY COMPLIED WITH THE CONSENT
      JUDGMENT'S TERMS. ............................................................... 2

     A.   All Parties Agree the Action Items Have Been Fulfilled. .......... 2

     B.   This Court Does Not Owe "Heightened Deference" to the
         District Court. ............................................................... 3

     C.   Nothing More than Substantial Compliance Is Required. ......... 7

     D.   Appellees Ignore Inconvenient Provisions of the Agreement. . 10

     E.   The State Satisfied the Consent Judgment's Purpose by
         Implementing Its Terms. ............................................... 12

     F.   Injunctions that Generally Require Parties to "Follow the Law"
         Are Overbroad. ............................................................. 14

     G.   The State Has Satisfied Its Evidentiary Burden. .................... 17

  II.  NEW CONCERN FOR MALAPPORTIONMENT IS A CHANGE IN FACT
      WARRANTING DISSOLUTION OF THE CONSENT JUDGMENT. ............... 21

CONCLUSION .................................................................................. 23

CERTIFICATE OF SERVICE ............................................................. 24

CERTIFICATE OF COMPLIANCE ...................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Allen v. Louisiana,*
  14 F.4th 366 (5th Cir. 2021) ....................................................... passim

*Anderson v. City of New Orleans,*
  38 F.4th 472 (5th Cir. 2022) ................................................................. 1

*Baldwin v. Bd. of Sup'rs for Univ. of La. Sys.,*
  2014-0827 (La. 10/15/14), 156 So. 3d 33 ....................................... 11, 12

*Bell v. Univ. of Maryland Coll. Park Campus Facilities Mgmt.,*
  No. CV PX-17-1655, 2018 WL 3008325 (D. Md. June 14, 2018) ......... 16

*Clark v. Coye,*
  60 F.3d 600 (9th Cir. 1995) ................................................................. 6

*Cooper v. Noble,*
  33 F.3d 540 (5th Cir. 1994) ......................................................... 4, 5, 6

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
  710 F.3d 579 (5th Cir. 2013) ............................................................. 15

*Davison v. Plowman,*
  247 F. Supp. 3d 767 (E.D. Va. 2017) .................................................. 20

*Dugue v. Levy,*
  114 La. 21, 37 So. 995 (1904) ............................................................. 8

*Fed. Election Comm'n v. Furgatch,*
  869 F.2d 1256 (9th Cir. 1989) ........................................................... 15

*Frew v. Janek,*
  780 F.3d 320 (5th Cir. 2015) ............................................. 5, 7, 9, 13, 14

*Frew v. Janek,*
  820 F.3d 715 (5th Cir. 2016) ............................................................... 9

*Horne v. Flores,*
    557 U.S. 433 (2009) ................................................................... passim

*Inmates of Suffolk Cnty. Jail v. Rufo,*
    12 F.3d 286 (1st Cir. 1993) ............................................................. 21

*Jeff D. v. Otter,*
    643 F.3d 278 (9th Cir. 2011) ...................................................... 10, 13

*Koonce v. Dousay,*
    2006-1498 (La. App. 3 Cir. 3/7/07), 952 So. 2d 893.............................. 8

*Lineback v. Spurlino Materials, LLC,*
    546 F.3d 491 (7th Cir. 2008) ........................................................... 15

*Lucille Ladies' Ready-To-Wear v. Glens Falls Ins. Co.,*
    168 La. 696 (1929) ........................................................................... 8

*M. D. by Stukenberg v. Abbott,*
    907 F.3d 237 (5th Cir. 2018) ........................................................... 15

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ....................................................................... 20

*Merrill v. Milligan,*
    142 S. Ct. 879 (2022) ..................................................................... 20

*Miller v. Johnson,*
    515 U.S. 900 (1995) ....................................................................... 22

*Milliken v. Bradley,*
    433 U.S. 267 (1977) ....................................................................... 15

*NLRB v. Express Pub. Co.,*
    312 U.S. 426 (1941) ....................................................................... 16

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ........................................................... 16

*Rufo v. Inmates of Suffolk County Jail,*
    502 U.S. 367 (1992) .................................................................. passim

*Salling Wiping Cloth Co. v. Sewell, Inc.,*
    419 So. 2d 112 (La. Ct. App. 1982) ........................................8

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) ...................................................................20

*United States v. Guerrero,*
    768 F.3d 351 (5th Cir. 2014) ...................................................7

*Waite v. Macy,*
    246 U.S. 606 (1918) .................................................................16

*Walker v. U.S. Dep't of Hous. & Urb. Dev.,*
    912 F.2d 819 (5th Cir. 1990) ...................................................5

*Wallace v. Kern,*
    499 F.2d 1345 (2d Cir. 1974) .................................................16

*Younger v. Harris,*
    401 U.S. 37 (1971) ...................................................................22

**Statutes**

La. Civ. Code art. 2014 .................................................................8

La. Civ. Code art. 2050 ...............................................................11

La. Civ. Code art. 2045 ...............................................................12

La. Civ. Code art. 2046 ...............................................................12

## Other Authorities

LABI, *LABI Judicial Modernization Project, Modernizing Judicial District Lines*, https://labi.org/wpcontent/uploads/2021/10/Judicial-Realignment.pdf. ..................................................................22

Laura Bliss, *10 Years Later, There's So Much We Don't Know About Where Katrina Survivors Ended Up*, Bloomberg, https://www.bloomberg.com/news/articles/2015-08-25/8-maps-of-displacement-and-return-in-new-orleans-after-katrina.....................19

## Rules

Fed. R. Civ. P. 60(b)(5) ....................................................... passim

Fed. R. Civ. P. 65(d)(1) ...........................................................15

## Constitutional Provisions

La. Const. art. I, § 1................................................................22

La. Const. art. IV § 8 ................................................................1

## SUMMARY OF THE ARGUMENT

Dissolution of the consent judgment is warranted under either the first or third clause of Rule 60(b)(5). The consent judgment has been satisfied because, as all Appellees (and the district court) agree, the State enacted two rounds of legislation that fulfilled the consent judgment's eight action items. And applying the consent judgment prospectively would be inequitable in light of state officials' concern for widespread malapportionment and the practical barriers a federal consent decree places on the redistricting process.

Plaintiffs, the USDOJ, now-retired Chief Justice Johnson,[1] and the Governor of Louisiana[2] filed briefs opposing the Louisiana Attorney General's appeal here. To resist the conclusion that the consent judgment has been satisfied under the first prong of Rule 60(b)(5), Appellees offer

---

[1] Chief Justice Johnson retired in 2020. She has no longer has a cognizable legal interest in this litigation.

[2] Despite having every opportunity to participate below, Governor Edwards chose to play no role in this litigation in the district court. For that reason, this Court did not allow the Governor to participate as a party in this appeal—instead granting him leave merely to file an amicus brief. "For obvious reasons, new issues, generally, cannot be raised in an amicus brief." *Anderson v. City of New Orleans*, 38 F.4th 472, 481 (5th Cir. 2022). All the Governor's arguments are forfeited. But the Louisiana Attorney General emphasizes that, despite the Governor's arguments to the contrary, the Louisiana Constitution fully authorizes the Attorney General to represent the State's interests in this matter. La. Const. art. IV § 8.

1

a slew of arguments that misstate the appropriate standard of review, misconstrue key terms of the consent judgment, assign a broad purpose to the consent judgment that does not exist, and ignore the Supreme Court's concern for the federalism issues inherent in institutional reform cases. The Court should reject each of these arguments.

Appellees further contend that malapportionment is nothing new in Louisiana, and so it is not inequitable to apply the consent judgment going forward. But this misses the point. State officials' *concern* about addressing the inequity of malapportionment is new, and the consent judgment makes it harder for the State to redistrict and correct the problem. Under the Supreme Court's decision in *Horne v. Flores*, that counts as a "changed circumstance" which "warrant[s] reexamination of the original judgment." 557 U.S. 433, 448 (2009).

## ARGUMENT

## I.    THE STATE HAS SUBSTANTIALLY COMPLIED WITH THE CONSENT JUDGMENT'S TERMS.

### A. All Parties Agree the Action Items Have Been Fulfilled.

Appellees agree with the district court's finding that "the State has complied with the terms of the Consent Judgment by enacting Act 512 to create the temporary *Chisom* seat and Act 776 to create the current

District Seven."[3] ROA.1948; *see* USDOJ Br. at 19; Pls.' Br. at 25; Johnson Br. at 23. In other words, it is undisputed that the State conducted *two rounds of legislation* to satisfy all eight items on the consent judgment's checklist. Moreover, Appellees agree that Justice Johnson served long enough on the Court to become its chief justice before her retirement. *See* ROA.1433. Nobody denies that Justice Piper Griffin was recently elected to a ten-year term on the bench. *See* ROA.1558–83. In short, there is no real dispute that the State has complied with the consent judgment's terms for *thirty years*.

In light of these undisputed facts, "one might think the decree's final remedy has been implemented." *Allen v. Louisiana*, 14 F.4th 366, 374 (5th Cir. 2021). Nonetheless, the district court rejected the State's request to return the redistricting power to the People. That was error.

## B. This Court Does Not Owe "Heightened Deference" to the District Court.

On appeal, Plaintiffs' brief starts off on the wrong foot by misstating the standard of review. According to Plaintiffs, the Court owes

---

[3] Perplexingly, and in direct contradiction to the district court's finding, the Governor's *amicus* brief posits that there has been "*no* positive action taken by the legislature to fully remedy the injustice which necessitates this consent judgment." Gov. *Amicus* Br. at 8 (emphasis added).

"heightened deference" to the district court's use of its discretion because this is an institutional reform case and an appellate court should pay special heed to a district judge who has spent many years living with such a case. Pls.' Br. at 14 (cleaned up) (quoting *Cooper v. Noble*, 33 F.3d 540, 543 (5th Cir. 1994)). To support this position, Plaintiffs point to this Court's decision in *Cooper v. Noble*—which was decided in 1994 and relies on Justice O'Connor's concurrence in *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 394 (1992). Pls.' Br. at 14.

Plaintiffs' reliance on *Cooper* is misplaced because it is distinguishable from the current case. Judge Morgan assumed the bench in 2012, roughly twenty years after the parties signed the consent decree. Although Judge Morgan oversaw the litigation surrounding the question of whether Justice Johnson should become the Louisiana Supreme Court's chief justice, she has not "effectively been overseeing a large public institution over a long period of time." *Rufo*, 502 U.S. at 394 (O'Connor, J., concurring); *cf. Cooper*, 33 F.3d at 542–43 (observing that the magistrate judge had "many years" of experience "closely supervis[ing] the jail's efforts to comply with the consent judgments"). So no extra deference is warranted here.

4

Moreover, the parties all agree that the eight action items of the consent judgment have been fulfilled. Whether the consent judgment requires anything more than satisfaction of the action items is a question of law that this Court reviews de novo. *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 912 F.2d 819, 825 (5th Cir. 1990); *accord Allen*, 14 F.4th at 370. If the Court concludes that the nothing more is required as a matter of law, then there is no reason to give any deference to the district court. *See Frew v. Janek*, 780 F.3d 320, 329–30 (5th Cir. 2015) (suggesting that the "the flexible standard for modifying consent decrees" associated with the third clause of Rule 60(b)(5) should not apply when considering whether a judgment has been satisfied under the first clause).

Finally, *Cooper* is no longer good law after the Supreme Court's decision in *Horne*. Writing only for herself, Justice O'Connor opined in *Rufo* that heightened deference is sometimes warranted when the district court has lots of experience with an institutional reform case. *Rufo*, 502 U.S. at 394 (O'Connor, J., concurring). And this Court echoed that reasoning in 1994 in *Cooper*. 33 F.3d at 543. But in *Horne*—a case from 2009—the Supreme Court expressly rejected the Ninth Circuit's use of a "heightened standard" in an institutional reform case. *Horne*, 557

U.S. at 450–51 ("Rather than applying a flexible standard that seeks to return control to state and local officials as soon as a violation of federal law has been remedied, the Court of Appeals used *a heightened standard* that paid insufficient attention to federalism concerns." (emphasis added)). The Supreme Court approved of language from the Ninth Circuit's decision explaining that "review of the denial of Rule 60(b)(5) relief should generally be *somewhat closer* in the context of institutional injunctions against states due to federalism concerns." *Id.* at 451 (cleaned up) (emphasis added); *see Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995) ("[W]e scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' federal constitutional and statutory rights but does not require more of state officials than is necessary to assure their compliance with federal law.").

The Supreme Court's language in *Horne* unequivocally rejects the application of a heightened standard when considering a motion under Rule 60(b)(5) in an institutional reform case. Neither Justice O'Connor's concurrence from *Rufo* nor *Cooper*'s "heightened scrutiny" language can survive the Court's controlling decision in *Horne*. And so, this panel is not bound by *Cooper*. *See United States v. Guerrero*, 768 F.3d 351, 359

6

(5th Cir. 2014) ("For a Supreme Court decision to change our Circuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent." (cleaned up)).

## C. Nothing More than Substantial Compliance Is Required.

The USDOJ correctly acknowledges that this Court's "substantial compliance" standard applies. *See* USDOJ Br. at 14 ("A moving party is entitled to relief for having satisfied the judgment where it demonstrates 'substantial compliance.'" (quoting *Frew*, 780 F.3d at 327, 330–32). Plaintiffs, by contrast, assert that something more than substantial compliance is required. Pls.' Br. at 26 ("The Attorney General now wrongly attempts to graft a 'substantial compliance' doctrine here because it incorrectly suggests that this Court has generally interpreted prong one of Rule 60(b)(5) to require only such compliance.").

Substantial compliance is all that is required. That follows directly from the fact that federal courts interpret consent judgments as a contract under the laws of the State. *Allen*, 14 F.4th at 371 ("We consult the contract law of the relevant state, here Louisiana."); *see Frew*, 780 F.3d at 330 ("Texas law allows substantial compliance."). As the State

7

pointed out in its opening brief, "substantial performance of the contract is all that [Louisiana] law requires." *Dugue v. Levy*, 114 La. 21, 23, 37 So. 995, 996 (1904).

Plaintiffs contend in a footnote that the substantial compliance standard applies almost exclusively in the "construction context." Pls.' Br. at 27 n.4. But they offer no authority to support that assertion. At any rate, many Louisiana cases considering all sorts of contracts— including settlement agreements—apply the substantial compliance standard. *See, e.g.*, *Lucille Ladies' Ready-To-Wear v. Glens Falls Ins. Co.*, 168 La. 696, 697, 699 (1929) (considering whether there was "substantial compliance" with the terms of "a policy of insurance on a stock of merchandise that was destroyed by fire"); *Salling Wiping Cloth Co. v. Sewell, Inc.*, 419 So. 2d 112, 114 (La. Ct. App. 1982) ("The trial court found that the terms of the *settlement or compromise agreement* had been substantially complied with . . . ." (emphasis added)); *Koonce v. Dousay*, 2006-1498 (La. App. 3 Cir. 3/7/07), 952 So. 2d 893, 896 ("The trial court found that there was substantial compliance with the lease agreement."); *accord* La. Civ. Code art. 2014 (requiring substantial compliance standard).

8

Appellees contend that the district court was right to use the standards from a desegregation case when determining "whether the State has satisfied the consent judgment. USDOJ Br. at 12. The USDOJ posits that "although school desegregation has a unique legal history, this Court has recognized that the standard for termination in desegregation cases may be of some applicability." USDOJ Br. at 12. But actually the opposite is true. In the context of a motion for relief under the first clause of Rule 60(b)(5), this Court expressly *declined* to rely on desegregation cases because they "present unique issues in consent decree jurisprudence." *Frew*, 780 F.3d at 329. The Court should do the same here.

In short, the substantial compliance standard applies as a matter of Louisiana law. This Court has explained that "[s]ubstantial compliance excuses deviations from a contract's provisions that do not severely impair the contractual provision's purpose." *Frew v. Janek*, 820 F.3d 715, 721 (5th Cir. 2016). The State easily meets that standard here because of the undisputed facts showing the State has fulfilled each of the consent judgment's action items over thirty years.

9

**D. Appellees Ignore Inconvenient Provisions of the Agreement.**

Appellees double-down on the district court's misreading of the consent judgment. They each adopt the district court's view that the parties agreed to remedy not merely the specific Section 2 violation alleged in Plaintiffs' complaint, but also to prevent any sort of Section 2 violation from ever recurring in Orleans Parish. *See, e.g.*, Pls.' Br. at 25; Johnson Br. at 22 ("The State's argument that the Consent Judgment is not meant to 'remedy potential Section 2 violations beyond the terms of the consent judgment' fails to pass muster."). Appellees insist that the consent judgment's *purpose* was to prevent the State from committing any future Section 2 violations. USDOJ Br. at 15, 16, 19 ("[T]he text of the Consent Judgment demonstrates that its broader purpose was to ensure that, going forward, Black voters in Orleans Parish would have an equal opportunity to elect candidates of their choice, in compliance with the VRA."); Johnson Br. at 2 ("The purpose of the Consent Judgment . . . was to ensure the State's compliance with Section 2.").

As discussed, the Court should interpret the consent judgment as a contract in accordance with Louisiana law. *Allen*, 14 F.4th at 371; *see Jeff D. v. Otter*, 643 F.3d 278, 288 (9th Cir. 2011) ("[T]he decrees themselves

set out their basic purposes."). And "a contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions." *Baldwin v. Bd. of Sup'rs for Univ. of La. Sys.*, 2014-0827, p. 7 (La. 10/15/14), 156 So. 3d 33 (citing La. Civ. Code art. 2050).

Appellees misread the plain terms of the consent judgment. In 1992, Plaintiffs and the USDOJ expressly agreed that complying with the provisions of the consent judgment would "bring the system for electing the Louisiana Supreme Court into compliance with Section 2." ROA.98. The Defendants expressed the same view. ROA.98 ("*[T]he relief contained in this consent judgment* will ensure that the system for electing the Louisiana Supreme Court is in compliance with Section 2." (emphasis added)). Defendants emphatically disagreed that there was any Section 2 violation in the first place. ROA.98. ("[D]efendants do not agree with" Plaintiffs' contention that the multi-member district violated § 2.). Defendants "only enter[ed] into this compromise agreement to resolve [the] extensive and costly litigation." ROA.98.

Appellees must ignore these provisions to maintain their argument that the consent judgment has the broad purpose of preventing Section 2 violations other than the one alleged in Plaintiffs' complaint. But

ignoring inconvenient provisions in a contract is incompatible with "seek[ing] the parties' common intent"—which is what Louisiana contract law requires. *Allen*, 14 F.4th at 371 (citing La. Civ. Code arts. 2045, 2046). This Court should read the agreement "as a whole" and reject Appellees' invitation to turn a blind eye on provisions incompatible with their interpretation. *Allen*, 14 F.4th at 371; *Baldwin*, 2014-0827, p. 7 (La. 10/15/14), 156 So. 3d 33.

### E. The State Satisfied the Consent Judgment's Purpose by Implementing Its Terms.

As discussed, the plain terms of the consent judgment are incompatible with Appellees' view that the consent judgment contains a broader purpose of preventing Section 2 violations. But there are other fundamental problems with Appellees' contention that the district court retains jurisdiction to ensure that the State, as a general matter, follows the law and adheres to Section 2.

According to Appellees, the district court retains jurisdiction to ensure the State's compliance with the consent judgment's purpose, even though the terms of the agreement have been satisfied. USDOJ Br. at 15, 19 ("Although action items are clearly relevant to compliance, the court must also determine 'whether the larger purposes of the decree[] have

been served.'" (quoting *Jeff D. v. Otter*, 643 F.3d 278, 288 (9th Cir. 2011)); Johnson Br. at 23 ("The underlying conditions that led to entry of the Consent Judgment are not simply erased because certain enumerated items in the Judgment are satisfied.").

In *Frew v. Janek*, this Court rejected an argument identical to the one Appellees offer here. 780 F.3d at 328 (rejecting argument that "the district court erred in focusing narrowly on Defendants' satisfaction of specific provisions . . . and not considering the Decree's broader goals"). According to *Frew*, defendants "fulfill the purpose of [a] Decree by implementing the broad range of supportive initiatives memorialized in the Decree." *Id.* That makes sense because "[t]he whole point of negotiating and agreeing on a plethora of specific, highly detailed action plans was to establish a clearly defined roadmap for attempting to achieve the Decree's purpose." *Id.* And "[t]o read the Decree as implying a secondary assessment of the impact of each action item would introduce a new requirement to which the parties never agreed." *Id.* at 328–29.

The USDOJ's brief heavily relies on the Ninth Circuit's decision in *Jeff D. v. Otter* for the proposition that the purpose of the decree matters as much—if not more—than the fulfillment of the decree's terms when

determining whether a consent judgment has been satisfied. USDOJ Br. at 19. But, when rejecting an identical argument in *Frew*, this Court expressly distinguished that case by observing that "[t]he *Jeff D.* parties bargained for *a termination condition that included an independent assessment by the district court of whether the plaintiffs' complaints had been resolved.*" *Frew*, 780 F.3d at 330 (emphasis added). That matters because "when the district court vacated the consent decree after assessing compliance with the specific action items only, it did not give the plaintiffs the benefit of their bargain." *Id.* And, "[a]lthough the Ninth Circuit did not emphasize this fact," this Court found the case "to be distinguishable on this basis." *Id.*

The parties here did not bargain for any "independent assessment" of whether fulfillment of the action items actually remedied the underlying Section 2 violation. *Id.* Thus, *Jeff D.* is distinguishable, and *Frew* controls.

### F. Injunctions that Generally Require Parties to "Follow the Law" Are Overbroad.

Regardless, Appellees' belief that the consent judgment requires fulfillment of the action items *plus* a broad commitment to follow the law must be wrong because consent judgments are "subject to the rules

generally applicable to other judgments and decrees." *Rufo*, 502 U.S. at 378. And so, like all injunctions, the consent judgment must be "'narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order.'" *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013)); *accord* Fed. R. Civ. P. 65(d)(1) (requiring "every order granting an injunction" to "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained or required").

"[R]emedies fashioned by the federal courts to address constitutional infirmities 'must directly address and relate to the constitutional violation itself.'" *Stukenberg*, 907 F.3d at 271 (quoting *Milliken v. Bradley*, 433 U.S. 267, 282 (1977)). A federal court may not "order relief beyond what is minimally required to comport with" federal law. *Id.* at 272.

Injunctions that generally require litigants to follow the law are overbroad. *See Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008); *see also Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir. 1989) (holding that an injunction that enjoins "future

violations" of a statute fails to specify the precise conduct prohibited); *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014) (requiring that an injunction be "more specific than a bare injunction to follow the law"); *Bell v. Univ. of Maryland Coll. Park Campus Facilities Mgmt.*, No. CV PX-17-1655, 2018 WL 3008325, at *5 (D. Md. June 14, 2018) ("Although Plaintiffs broadly request that this Court enjoin Defendants from engaging in 'further acts of discrimination . . . as contrary to federal and state law,' this kind of 'follow the law' injunction is overbroad and unenforceable.").

Finally, "[t]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute." *NLRB v. Express Pub. Co.*, 312 U.S. 426, 435–37 (1941). Nor does it justify "subject[ing] the defendant to contempt proceedings if he shall at any time in the future commit some new violation *unlike and unrelated to* that with which he was originally charged." *Id.* (emphasis added). "Courts will not issue injunctions against administrative officers on the mere apprehension that they will not do their duty or will not follow the law." *Waite v. Macy*, 246 U.S. 606, 609 (1918); *see Wallace v. Kern*, 499 F.2d 1345, 1351 (2d Cir. 1974) ("[F]ederal

courts must limit their inquiry to the specific facts regarding a complaining petitioner.").

In sum, the consent judgment does not and *could not* have bound the State to both complete the action items to remedy the specific Section 2 violation at issue in this case *and* follow the law as a general matter. Concluding otherwise would significantly increase federal courts' authority over state institutions—which, in turn, would violate the federalism principles at stake in this litigation. *See Horne*, 557 U.S. at 450 ("If a federal consent decree is not limited to reasonable and necessary implementations of federal law, it may improperly deprive future officials of their designated legislative and executive powers.").

### G. The State Has Satisfied Its Evidentiary Burden.

Appellees contend that the State has failed to meet its evidentiary burden under Rule 60(b)(5). *See* USDOJ Br. at 12 (contending that the State's "evidence simply demonstrates the Consent Judgment is likely working, not that the State has implemented a durable remedy"); Johnson Br. at 16 ("At this juncture, insufficient evidence has been marshalled to justify complete vitiation of the Consent Judgment, the purpose of which has been demonstrably unfulfilled."); Pls.' Br. at 16

(suggesting the State should "have presented evidence like the mitigation of racially polarized voting").

Most of these arguments hinge on the Court adopting Appellees' view that the State bears a burden to show more than substantial compliance with the consent judgment's terms. *See* USDOJ Br. at 20 (contending the district court "lacked a basis to conclude that *the State would continue to guard against vote dilution* given that it presented no evidence showing that a new plan would comply with Section 2 and *continue to meet the Consent Judgment's objectives*" (emphasis added)). As discussed, the terms of the consent judgment do not require such a showing, this Court expressly rejected a similar argument in *Frew*, and a bare injunction to follow the law would be overbroad. Armed with a proper understanding of the consent judgment's scope, there can be no doubt that the State complied with its terms. Indeed, the district court expressly found that the State satisfied all the consent judgment's enumerated provisions. ROA.1948.

To be sure, the Supreme Court has suggested that a remedy must be "durable." *Horne*, 557 U.S. at 450 ("If a durable remedy has been implemented, continued enforcement of the order is not only

unnecessary, but improper."). But, however the Court defines "durable," the remedy in this case easily satisfies that standard. Beyond the thirty years of relief the State has already provided to Plaintiffs, Justice Griffin's term will not end until 2030.

The USDOJ points out that, at a hearing before the district court, the State's lawyer could not "commit to maintaining a Black opportunity district in Orleans Parish or to confirm whether one would be required under Section 2 of the VRA should the court dissolve the Consent Judgment." USDOJ Br. at 19 (citing ROA.2024–25). This point offers Appellees no support.

No lawyer in the Louisiana Attorney General's office can speak for the Legislature. Nor can any lawyer predict where minority populations will live in the future. *See* Laura Bliss, *10 Years Later, There's So Much We Don't Know About Where Katrina Survivors Ended Up*, Bloomberg, (explaining that, "as of 2013, only 30 percent of residents of the low-income, predominantly black Lower Ninth Ward had returned" to New Orleans after Hurricane Katrina).[4] And no lawyer can reliably predict

---

[4] The article is available at https://www.bloomberg.com/news/articles/2015-08-25/8-maps-of-displacement-and-return-in-new-orleans-after-katrina.

how the Supreme Court will interpret Section 2 in *Merrill v. Milligan*, 142 S. Ct. 879 (2022)—a case recently argued before the Supreme Court but has yet to be decided. In any event, "[t]he mere possibility that [an institutional defendant] might someday reverse course and re-adopt the old policy does not present 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Davison v. Plowman*, 247 F. Supp. 3d 767, 782 (E.D. Va. 2017) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Moreover, forcing the State to make some sort of showing under the Supreme Court's decision in *Thornburg v. Gingles* is not required by the terms of the consent judgment and simply makes no sense. To make out a vote dilution claim under *Gingles*, a plaintiff must allege that "voters have been unable to elect a representative of their choice." *Thornburg v. Gingles*, 478 U.S. 30, 67 (1986). Plaintiffs' brief expressly acknowledges that they are *at this moment* represented by their preferred candidate—Justice Griffin. *See* Pls.' Br. at 6 ("[A]nother *candidate of choice of Black voters*, who is a Black justice—Piper D. Griffin, was elected to the Seventh Judicial District for a ten-year term." (emphasis added)). Any

20

*Gingles* claim fails immediately.

At bottom, none of the facts here are in dispute. After thirty years of compliance, including two rounds of legislation required by the consent judgment's terms, there is no reason to think that the original alleged violation (*i.e.*, the two-member district) will be repeated. *See Inmates of Suffolk Cnty. Jail v. Rufo*, 12 F.3d 286, 292 (1st Cir. 1993) (considering whether "there is relatively little or no likelihood that the original constitutional violation will promptly be repeated when the decree is lifted"). All the recent (but failed) bills in the Legislature preserved the majority-minority district. ROA.2028 (discussing "HB 738, SB 288, SB 307, SB 308, and SB 309"). Considering the sensitive federalism principles at stake in this litigation, the Court should dissolve the injunction and return the redistricting power to state officials because the consent judgment "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5).

## II.   NEW CONCERN FOR MALAPPORTIONMENT IS A CHANGE IN FACT WARRANTING DISSOLUTION OF THE CONSENT JUDGMENT.

Appellees contend that "[m]alapportionment is not a changed circumstance when its existence is nearly a century old." Johnson Br. at 39; *see* Pls.' Br. at 10 ("[T]he State failed to include any evidentiary

support for its contention that the severe malapportionment alleged constituted a 'significant change'"). That may be true, but it misses the point. The Supreme Court's opinion in *Horne* explains that "new policy insights" by local officials amount to a changed circumstance that "warrant[s] reexamination of the original judgment." *Horne*, 557 U.S. at 448. Malapportionment may be old, but the Louisiana Attorney General's concern that it results in unequal voting power is not.

As explained in the State's opening brief, "[e]lectoral districting is a most difficult subject for legislatures." *Miller v. Johnson*, 515 U.S. 900, 915 (1995); Blue Br. at 40–41. And the consent judgment makes that process even more difficult. *See* LABI, *LABI Judicial Modernization Project, Modernizing Judicial District Lines*, https://labi.org/wpcontent/uploads/2021/10/Judicial-Realignment.pdf. Appellees' offers to assist in this process are antithetical to principles of self-government and "Our Federalism." *Younger v. Harris*, 401 U.S. 37, 44 (1971); *see* La. Const. art. I, § 1. In light of the State's long compliance with the consent judgment, there is no need for the federal judiciary to oversee the State's redistricting of its highest tribunal.

# CONCLUSION

The State respectfully asks the Court to reverse the district court and dissolve the consent judgment.

Very respectfully submitted,

JEFF LANDRY
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Telephone: 225-938-0779

ELIZABETH MURRILL
Solicitor General

*/s/ Shae McPhee*
SHAE MCPHEE
Deputy Solicitor General
mcphees@ag.louisiana.gov

ANGELIQUE DUHON FREEL
CAREY T. JONES
LAURYN SUDDUTH
JEFFREY MICHAEL WALE
Assistant Attorneys General

*Counsel for Appellant*

23

**CERTIFICATE OF SERVICE**

I certify that on November 14, 2022, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ *Shae McPhee*
Shae McPhee
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that:

1.    This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains **4,533** words, exclusive of parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Century Schoolbook, 14-point font.

*/s/ Shae McPhee*
Shae McPhee
Attorney for Appellant

November 14, 2022